# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 6333 | **DATE** | 1/13/2012 |
| **CASE TITLE** | Dyno, LLC vs. Southeast Asia Direct, Ltd. | | |

**DOCKET ENTRY TEXT**

Defendant Southeast Asia Direct Ltd.'s motion to vacate default judgment and the quash citations to discover assets [Dkt. #30] is granted. Case reinstated. The Clerk shall reopen this case. Status hearing is set for 2/21/2012 at 8:30 a.m.

■[ For further details see text below.]

Notices mailed by Judicial staff.

## STATEMENT

Dyno, LLC ("Dyno"), a Delaware company, commenced this action against Southeast Asia Direct, Ltd. ("Southeast Limited"), a Hong Kong company, on October 4, 2010 by filing a two count complaint alleging breach of contract and unjust enrichment. [Dkt. #1.] Dyno served Thomas Envoy, legal counsel and registered agent for Southeast Asia LLC ("Southeast LLC"), with a copy of the summons and the complaint on October 7, 2010. [Dkt. #7.] Southeast Limited failed to answer or otherwise plead, and on November 23, 2010, this court entered default judgment against it in the amount of $1,553,294.60. [Dkt. #11.] Dyno commenced proceedings to enforce its judgment and served several citations to discover assets. [Dkt. #13, 17, 24, 26–28, 32.] On December 2, 2011, Southeast Limited moved to vacate the default judgment and quash citations to discover assets claiming that service of process was improper and that the default judgment is void under Federal Rule of Civil Procedure 60(b). [Dkt. #30.]

Judgment by default may be set aside pursuant to Federal Rules of Civil Procedure 55(c) and 60(b). Under Rule 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 60(b)(4) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . the judgment is void." To vacate an entry of default pursuant to Rule 55(c), "the moving party must show: (1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." *Sun* v. *Bd. of Trs. of Univ. of Ill.*, 473 F.3d 799, 809–10 (7th Cir. 2007) (citing *Pretzel & Stouffer, Chartered* v. *Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994)). "The elements for relief from default judgment are basically the same as the elements for setting aside an entry of default, although the tests are more stringently applied in the case of a default judgment." *Breuer Elec. Mfg.* v. *Toronado Sys. of Am.*, 687 F.2d 182, 187 (7th Cir. 1982). If the court lacks jurisdiction, however, a defendant need not demonstrate quick action and a meritorious defense; rather, a showing of good cause is dispositive. *See United States* v. *Blazina*, No. 00 C 635, 2011 WL 5101709, at *2 (N.D. Ill. Oct. 20, 2011) ("A failure to serve process would

deprive the court of personal jurisdiction, rendering the default judgment void and making additional analysis of [defendant's] motion to vacate moot.") (citing *Guess?, Inc*. v. *Chang*, 163 F.R.D. 505, 508 (N.D. Ill. 1995); *be2 LLC* v. *Ivanov*, 642 F.3d 555, 557 (7th Cir. 2011)).

Dyno urges this court to deny the motion to vacate the default judgment claiming that service on Southeast Limited was proper. Dyno argues that (1) it properly served Southeast Limited's registered agent, McEvoy, and (2) alternatively, that Southeast Limited and Southeast LLC share a unity of interest and ownership, and as a result Southeast Limited was properly served through service on Southeast LLC. As set out in *Miles* v. *WTMX Radio Network*,

> When a plaintiff sues in federal court, he may effectuate service pursuant to the Federal Rules of Civil Procedure or the law of the state in which the court sits. *See* Fed. R. Civ. P. 4. For our purposes here, Illinois law is similar to the Federal Rules. *Compare* Fed. R. Civ. P. 4(h), *with* 735 ILCS 5/2-204; *compare* Fed. R. Civ. P. 4(e), *with* 735 ILCS 5/2-203. . . . Federal Rule of Civil Procedure 4(h) governs service of a corporation. It allows service to be effectuated by: 'delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.'

No. 02 C 0427, 2002 WL 31369424, at *4 (N.D. Ill. Oct. 18, 2002) (Judge St. Eve) (quoting Fed. R. Civ. P. 4(h)(1)).

Under federal and state law, service on a corporation's registered agent is valid provided the agent possesses actual authority to accept service. *See United States* v. *Norden Enterprises, LLC*., No. 01 C 8968, 2002 WL 1632633, at *2 (N.D. Ill. July 22, 2002) ("the district courts in this circuit have read Rule 4(h)(1) [as] requiring that an agent have actual authority to receive service of process for that service to be valid.") (citations omitted)); *Dei* v. *Tumara Food Mart, Inc*., 941 N.E.2d 920, 925, 406 Ill. App. 3d 856, 347 Ill. Dec. 51 (Ill. App. Ct. 2010) ("For service of process on a corporation to be effectively made upon an agent of defendant, such agent must have actual authority to accept service on behalf of the corporation.") (citations omitted)).

The court may quickly dispose of Dyno's first argument because McEvoy was not Southeast Limited's registered agent and he did not possess actual authority to accept service on its behalf. Southeast Limited is owned by Benjamin Landen and Cheng Fenge. (Dkt. #36, Landen Supp. Aff. at ¶ 3.) Although McEvoy was mistakenly listed as corporate counsel on the Southeast Limited website, *see infra*, he was never employed as such and he was not an officer or agent of the company. (Dkt. #30, McEvoy Aff. at ¶¶ 4– 6; Dkt. #36, McEvoy Aff. at ¶¶ 5–7.); *see also Trotter* v. *Oppenheimer & Co., Inc*., No. 96 C 1238, 1997 WL 102531, at *2 n.4 (N.D. Ill. Mar. 4, 1997) ("It is well-established that service upon a party's attorney) is insufficient unless the attorney has been appointed specifically for that purpose.") (citations omitted)).

Dyno's second argument, that Southeast Limited and Southeast LLC share a unity of interest and ownership so that service on Southeast LLC placed Southeast Limited on notice of the present lawsuit, is similarly unpersuasive. In general, "service on a foreign corporation cannot be had by service on a wholly-dominated subsidiary, where the corporate separation, although formal only, is real and not fictitious." *Leach Co.* v. *Gen. Sani-Can Mfg. Corp.*, 393 F.2d 183, 186 (7th Cir. 1968) (relying on *Cannon Mfg. Co.* v. *Cudahy Co.*, 267 U.S. 333, 45 S. Ct. 250, 69 L. Ed. 634 (1925)). In *Leach Co.* v. *General Sani-*

*Can Manufacturing Corp.*, the Seventh Circuit recognized a limited exception to this general rule and affirmed the entry of default judgment against a parent corporation that received service through a subsidiary acting as its agent. Although the two companies had no common owners and maintained separate records, the court found that they "did not observe even the form of corporate separation." *Id.* Rather, the parent company shipped large quantities of merchandise to the subsidiary under a liberal credit policy that disregarded the contractual formalities applied to other distributors. Additionally, the subsidiary's president received health and hospitalization insurance at the parent's expense, and was permitted use of a company car, which was purchased and insured by the parent. The subsidiary paid the parent at irregular intervals and owed the parent $15,000 to $20,000 at the time of the lawsuit. Taken together, the court found that these facts indicated that the subsidiary was "the sheerest of shells" for the parent, and that the parent company was properly served through service on the subsidiary's president. *Id.*

Although Dyno does not claim that Southeast LLC is a wholly-owned subsidiary of Southeast Limited, the analysis is similar.[1] Dyno argues that Southeast LLC and Southeast Limited are "so united that separate personalities . . . no longer exist," claiming that (1) Southeast Limited used its website to market to potential customers by claiming that it was a United States corporation with a North American office; (2) Southeast Limited and Southeast Direct shared the same corporate officers including Landen (Director), McEvoy (Counsel) and Kit Klehm (CEO); and (3) Southeast Limited and Southeast LLC used the same physical address in Barrington, Illinois to ship and deliver goods to Illinois customers.

Landen admits that he and Cheng previously worked for Southeast LLC. However, he resigned his position in 2006 and has not been affiliated with the company since. (Dkt. #36, Landen Supp. Aff. at ¶¶ 2, 4.) Landen also testified that Klehm was never an officer, agent or employee of Southeast Limited and that McEvoy never served as its corporate counsel. (*Id.* at ¶¶ 6–7.) Both Klehm and McEvoy confirm that they held no such positions with Southeast Limited. (Dkt. #36, McEvoy Aff. at ¶ 5; Dkt. #35, Klehm Dep. at 6:19–23.) Moreover, in his supplemental affidavit Landen explained that when he resigned from Southeast LLC, he "borrowed" some of its website content and posted it on Southeast Limited's website. (Dkt. #36, Landen Supp. Aff. at ¶ 5.) Thereafter, he neglected to revise Southeast Limited's website, and as a result, the sections referenced by Dyno do not accurately reflect the company's personnel. (*Id.*)[2] The shipping document submitted by Dyno is also insufficient to establish unity of interest and ownership between the two companies. (*See* Dkt. #35, Ex. 3.) This document, which is unauthenticated and disputed by Southeast Limited, purports to be a bill of lading for a shipment of goods from Southeast Limited using Southeast LLC's address in Barrington, Illinois. (*See id.*) However, even assuming *arguendo* that Dyno can establish all three of the aforementioned factors, taken together, they are still insufficient to establish a breakdown of the corporate form as required by *Leach Co.* As the party asserting the right to the federal forum, Dyno bears the burden of establishing that jurisdiction is proper. *Craig* v. *Ontario Corp.*, 543 F.3d 872, 876 (7th Cir. 2008) (citation omitted)). It has failed to meet that burden here. Southeast Limited's motion to vacate the default judgment and quash citations to discover assets is granted.

---

1 Dyno cites Illinois law concerning piercing the corporate veil for the proposition that Southeast LLC acted as Southeast Limited's alter ego and therefore service on Southeast LLC was proper. As summarized by the Seventh Circuit,

> a corporate entity will be disregarded and the veil of a limited liability pierced when two requirements are met: first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual [or other corporation] no longer exist; and second, circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.

*Sea-land Servs., Inc.* v. *The Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) (internal quotation marks and citation omitted).  To determine whether a corporation is so controlled by another to justify disregarding their separate identities, Illinois courts "focus on four factors: (1) the failure to maintain adequate corporate records or to comply with corporate formalities, (2) the commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own." *Id.* at 521 (internal quotation marks and citations omitted).  As discussed herein, the few common factors alleged by Dyno fall far short of satisfying this test.

      2  The website was removed during the pendency of this lawsuit.  (Dkt. #35, Goodson Aff. at ¶ 9.)